IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ROBERT METCALF**, | Case No. 3:14-cv-00302-ST |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **BLUE CROSS BLUE SHIELD OF MICHIGAN**, a Michigan corporation; **DAIMLER TRUCKS NORTH AMERICA, LLC**, a Delaware corporation; and **DAIMLER TRUCKS NORTH AMERICA LLC GROUP HEALTH PLAN**, | |
| Defendants. | |

Steven P. Krafchick, KRAFCHICK LAW FIRM, PLLC, 100 W Harrison, South Tower, Suite 300, Seattle, Washington 98119. Of Attorneys for Plaintiff.

Robert B. Miller, KILMER VOORHEES & LAURICK, P.C., 732 NW 19th Avenue, Portland, Oregon 97209-1302. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

United States Magistrate Judge Janice M. Stewart issued Findings and Recommendation in this case on August 27, 2014. Dkt. 24 (hereinafter "F&R"). Judge Stewart recommended that Defendants' motion to dismiss for failure to state a claim be denied as to Claims 1 and 2 and granted as to Claim 3, with leave to replead as a separate ERISA violation.

PAGE 1 – OPINION AND ORDER

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3). For those portions of a magistrate's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."). Nor, however, does the Act "preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record."

Defendants timely filed an objection, Dkt. 26, to which Plaintiff Metcalf ("Metcalf") responded. Dkt. 28. Defendants object to the portion of Judge Stewart's F&R recommending that Defendants' motion be denied as to Claims 1 and 2. As no party has objected to the portion of the F&R regarding Claim 3, the Court reviews that portion for clear error on the face of the record. As no such error is apparent, the Court adopts that portion of the F&R. The Court reviews *de novo* the portion of the F&R regarding Claims 1 and 2 and adopts that portion as supplemented below.

## BACKGROUND

Robert Metcalf is a chiropractor in North Carolina. He regularly treats individual participants enrolled in Defendant Daimler Trucks North America LLC Group Health Plan ("Plan"). Healthcare providers who participate in the Plan are paid directly by the Plan; non-

PAGE 2 – OPINION AND ORDER

participating providers are typically paid by their patients, who must then file a claim with the Plan for reimbursement. Metcalf does not participate in the Plan. Instead, he makes the following arrangement with his patients: They assign their right to reimbursement directly to Metcalf and authorize him to pursue their claims on their behalf, as well as any other rights they have under the Plan in connection with his services. Both patient and provider benefit from this arrangement: Metcalf's patients get treated without having to pay out of pocket, and Metcalf streamlines his cash flow.

Insurance plans, however, typically incentivize healthcare providers to participate—and thereby subject the providers to cost constraints—with the promise of "quick, certain and direct payment from the insurer."[1] That incentive is reduced if non-participating providers may strike a deal with their patients, as Metcalf has done. The Employee Retirement Income Security Act of 1974 ("ERISA"),[2] the federal law governing employer health insurance plans, is silent as to whether healthcare benefits may be assigned.[3] Accordingly, the consensus among the federal courts is that ERISA neither mandates nor prohibits the assignability of healthcare benefits; Congress intended that issue to be open to bargaining between insurer and insured. *See* F&R at 7-8 (collecting cases).

The Plan at issue in this case does not contain an anti-assignment clause. The assignments to Metcalf were, therefore, valid.[4] But Metcalf alleges that although he regularly pursued claims on behalf of his patients insured by the Plan, Defendants have refused to pay him.

---

[1] *See generally Renfrew Ctr. v. Blue Cross & Blue Shield of Cent. N.Y., Inc.*, 1997 WL 204309, at *3-4 (N.D.N.Y. Apr. 10, 1997).

[2] 29 U.S.C. §§ 1001-1461.

[3] In "striking contrast" to this silence, ERISA does contain a "complex and extensive provision prohibiting assignment of *pension* benefits." *Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374, 1376 (9th Cir. 1986) (emphasis added).

[4] Defendants seem to agree: In their Objection to the F&R, they concede that they "[do] not challenge the validity of the assignments here." Dkt. 26 at 11.

Accordingly, he asserts four claims for relief, two of which are at issue here: first, his claim under 29 U.S.C. § 1132(a)(1)(B), for denying claims for benefits; and second, his claim under § 1132(a)(3), for failing to conduct a full and fair review of his claims.

## DISCUSSION

Defendants argue that Metcalf failed to state a claim for relief because he is not a statutory "beneficiary," has standing only derivative of his assignors, and has no right upon which to sue. The arguments in Defendants' Objection all depend on one basic factual premise: that Defendants have already paid all benefits owed—not to Metcalf, but to the participants, his patients.[5] Defendants argue that they have thereby discharged their obligations under ERISA and the Plan.

The Court's analysis proceeds as follows. First, regardless of the merits of Defendants' argument, several parts of Metcalf's claims survive. Next, as a matter of statutory interpretation, the assignee of a participant is a "beneficiary" under ERISA with an independent cause of action. Finally, under federal common law, an ERISA obligation may not be discharged, in the presence of a valid assignment, by paying the participant–assignor rather than the assignee.

## A.  The Benefits at Issue

Defendants' basic factual premise—that they have already paid the benefits owed—is contested: Metcalf alleges that some of the several hundred claims for benefits at issue were not paid to *anyone*. Dkt. 1 at 8. At this stage of the litigation, the Court must accept that well-pleaded material allegation as true. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th

---

[5] At earlier stages in the litigation, Defendants appear to have additionally argued both that the assignments at issue were invalid and that Metcalf lacked standing to sue. Those arguments did not depend on this premise—but Defendants have failed to renew those arguments in their Objection. Indeed, they have conceded that the assignments are valid, *see supra* n.4, and that Metcalf, at a minimum, has derivative standing as an assignee, *see* Dkt. 26 at 6 ("[Metcalf's] standing is derivative . . . .").

Cir. 2012). Furthermore, in addition to payment of past benefits, Metcalf seeks injunctive relief

for any future benefits his patients may assign him, Dkt. 1 at 18, as well as retrospective and

prospective relief regarding his entitlement to Explanations of Benefits and other procedural

rights. Dkt. 1 at 15-16, 18. Whether Defendants paid some past benefits directly to participants

does not affect this portion of Metcalf's claims. Therefore, with respect to his requests for

injunctive relief for future benefits, relief regarding procedural rights, and unpaid benefits,

Metcalf's claims survive: The only portion of Metcalf's claims for relief still in question is that

concerning past benefits that Defendants have already paid.

## B.  Beneficiaries under ERISA

The ERISA provisions under which Metcalf brings his claims, 29 U.S.C. § 1132(a)(1)(B)

and § 1132(a)(3), allow suit to be brought by a "beneficiary." Defendants argue that Metcalf is

not a "beneficiary" as defined by the statute. The litigation thus far has addressed this issue as a

matter of standing. In fact, however, it is a question on the merits. After the Supreme Court's

recent decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014),

the question is properly addressed as whether ERISA provides Metcalf with a cause of action.

### 1.  Statutory Standing

Defendants argue that Metcalf lacks statutory standing under ERISA because he is not a

statutory "beneficiary." If Metcalf lacks standing under ERISA, Defendants assert, he has

standing only as an assignee, derivative of his assignors' standing. Because his assignors have

been paid, they have no injury, and therefore no standing—and thus Metcalf has no standing,

Defendants maintain. If Defendants are correct that Metcalf lacks standing to bring a claim, then

any inquiry into the merits of an assignee's rights under ERISA is foreclosed.

In *Lexmark*, the Supreme Court clarified its jurisprudence on the requirement of statutory

"standing"—by eliminating it. Although the court below had analyzed the issue and the parties

had presented the question in terms of the plaintiff's "standing to sue under the Lanham Act," 134 S. Ct. at 1385, the Supreme Court recast the issue as a question on the merits: whether the plaintiff had a statutory cause of action. *See id.* at 1387 ("In sum, the question this case presents is . . . whether Static Control has a cause of action under the statute.") The Court expressly abjured both the "standing" label and the jurisdictional nature of the inquiry. *Id.* n.4.[6]

After *Lexmark*, the jurisdictional standing analysis under these circumstances is simply the familiar constitutional standing inquiry: whether Metcalf has "suffered or [is] imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *See id.* at 1386 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). That requirement is surely satisfied here. The remaining inquiry is simply "whether a legislatively conferred cause of action encompasses [Metcalf's] claim."[7] *See id.* at 1387.

**2. Cause of Action**

Whether Congress has provided Metcalf with a cause of action boils down to the original question—whether the term "beneficiary" in §§ 1132(a)(1)(B) & (a)(3) encompasses assignees—albeit now as a question on the merits, to be answered using "traditional tools of statutory interpretation." *See Lexmark*, 134 S. Ct. at 1387. The plain text of the statute defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). To Judge Stewart, this definition was "sufficiently broad to include a person such as Metcalf who has been

---

[6] For an excellent scholarly summary of *Lexmark*, see Richard M. Re, *The Doctrine Formerly Known as "Statutory Standing"*, Re's Judicata (Aug. 27, 2014, 2:30 PM), http://richardresjudicata.wordpress.com/2014/08/27/the-doctrine-formerly-known-as-statutory-standing/.

[7] The Ninth Circuit has not decided an ERISA statutory standing case since *Lexmark*, but this analysis accords with that in *Nat'l Health Plan Corp. v. Teamsters Local 469*, 2014 WL 4589917, at *2 (3d Cir. Sept. 16, 2014).

designated by participants . . . to receive benefits and pursue claims." F&R at 9. As a matter of plain text, this Court agrees.

 Defendants, however, object that such an interpretation is precluded by *Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374 (9th Cir. 1986). Plaintiffs respond that Judge Stewart's interpretation is *required* by *Misic*. But *Misic* neither precludes nor requires such an interpretation. *Misic* analyzed the issue under the rubric of standing; the court did not reach the statutory interpretation of "beneficiaries" because the doctor–assignee had, in his complaint, alleged that he was "stand[ing] in the shoes of the [b]eneficiaries." *Id.* at 1378 (quoting the complaint) (second alteration in original). That is, he had alleged that his standing was derivative. *Misic* held only that that allegation adequately established standing. The court expressed no opinion on whether Dr. Misic could have alleged standing in his own right, nor on whether an assignee could be a "beneficiary" under ERISA.[8]

 In most cases, *Misic* has provided sufficient authority for assignees to bring suit. Accordingly, the Ninth Circuit has not had occasion to address squarely whether the statutory definition of "beneficiary" encompasses assignees. By making payments directly to individual participants, Defendants have sidestepped the reasoning of *Misic*, which raises the question anew. But the Sixth Circuit, addressing this specific question, concluded that "[a] health care provider may assert an ERISA claim as a 'beneficiary' of an employee benefit plan if it has received a valid assignment of benefits." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d

---

[8] Indeed, the *Misic* court specifically noted that "in at least one case, assignees of persons statutorily permitted to sue under ERISA [had] themselves been permitted to sue under ERISA," 789 F.2d at 1378 n.4 (citing *Nw. Adm'rs, Inc. v. Con Iverson Trucking, Inc.*, 749 F.2d 1338, 1339 (9th Cir. 1984)), leaving open the possibility that Dr. Misic could have brought suit in his own right.

1272, 1277 (6th Cir. 1991). This authority is persuasive and comports with the plain text of the statutory definition.

In addition to analyzing the plain text and precedent, *Lexmark* directs that "a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" 134 S. Ct. at 1388 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The breadth of the zone-of-interests test "varies according to the provisions of law at issue." *Id.* at 1389 (quoting *Bennett v. Spear*, 520 U.S. 154, 164 (1997)). To determine which interests Congress intended to protect, *Lexmark* looked to the Lanham Act's statement of policy.

ERISA's statement of policy provides that the purpose of the law is "to protect . . . the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). In addition, Congress intended that assignability be a freely bargainable term in a healthcare plan. *Davidowitz v. Delta Dental Plan of Cal.*, 946 F.2d 1476, 1480-81 (1991). Taken together, these two propositions support the conclusion that where participants in a plan have bargained for the right to assign benefits, permitting an assignee to sue under ERISA protects not only the assignee, but the participant as well. Therefore, the interests of the assignee of a participant are well within the zone of interests protected by ERISA.[9]

In sum, the plain text of the statute encompasses assignees, who have been "designated by a participant" to become "entitled to a benefit" under a healthcare plan. *See* 29 U.S.C.

---

[9] This approach comports with related precedent. In *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1 (1983), the Supreme Court held that a state tax board attempting to levy participants' benefits did not have a cause of action under ERISA. *Id.* at 27. The Court did not engage in a zone-of-interests analysis, but the state tax board's interests were adverse to those of the participants. And in *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073 (9th Cir. 2000), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007), the Ninth Circuit held that the assignee of an assignee did not have standing, both because he was not included in the plain text of the statute and because "transforming health benefit claims into a freely tradable commodity" would do nothing to further ERISA's purpose of protecting participants and beneficiaries.

PAGE 8 – OPINION AND ORDER

§ 1002(8). This interpretation is supported by persuasive authority. *See Cromwell*, 944 F.2d at 1277. And the interests of an assignee fall within the zone of interests protected by ERISA. Therefore, the assignee of a participant has a cause of action as a "beneficiary" under §§ 1132(a)(1)(B) & (a)(3).

## C. ERISA Assignments as a Matter of Federal Common Law

Given its silence regarding whether healthcare benefits can be assigned, it is unsurprising that ERISA is also silent regarding the rights and obligations relating to such assignments. Of particular relevance here, ERISA says nothing about whether an ERISA obligation can be discharged, despite a valid assignment, by paying the assignor rather than the assignee. In the absence of statutory guidance, the federal courts "are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987)).

In that endeavor, the federal courts are to be guided by two sources: "the policies expressed in ERISA and other federal labor laws," and state law, from which they may borrow where appropriate. *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1125 (9th Cir. 2002) (quotation marks omitted). But under ERISA federal common law, "borrowed" state law neither applies of its own force nor is incorporated as the rule of decision. *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1439 (9th Cir. 1990); *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir. 1990). Instead, state law is merely a source of *guidance*, alongside the policies of ERISA, in the development of "a uniform federal common law." *Evans*, 916 F.2d at 1440.

Here, referring to Oregon and North Carolina law, Judge Stewart concluded that

> the state law governing assignments permits Metcalf, as the assignee, . . . to pursue claims to recover unpaid (denied) benefits and for benefits paid to the assignors (and not paid by the assignors to Metcalf) which failed to discharge the Plan's obligation after the Plan was allegedly notified of the Assignments.

F&R at 15. This appears to conform to the general rule: according to the *Restatement (Second) of Contracts*, after an obligor receives notice of an assignment, the obligor may discharge the obligation only by paying the assignee. § 338. Defendants object that this reference to state law impairs the uniformity of decisions under ERISA. But this is not so. The F&R "did not simply 'adopt' state law, but looked to state law in order to advance the development of federal common law." F&R at 12 n.2. Accordingly, even if a State were to adopt a different rule for assignments of general contract obligations, the rule for ERISA obligations would remain the same.

Defendants also urge that, in the ERISA context, adopting the general rule for discharging an assigned obligation would result in doctrinal inconsistency. The Oregon common-law rule is that an assignor may not collect on an obligation that she has assigned to another. *In re Martin*, 167 B.R. 609, 616 (Bankr. D. Or. 1994) (citing *Commercial National Bank v. Portland*, 37 Or. 33, 38-39 (1900)). In contrast, Defendants argue, the ERISA rule is that either an assignor or an assignee may collect. *Hansen v. Aetna Health & Life Ins. Co.*, 1999 WL 1074078, at *6 (D. Or. Nov. 4, 1999).[10]

Defendants' reliance on *Hansen* is misplaced. In *Hansen*, the defendant insurance company refused to pay the assignee, and the plaintiff–participant had to pay out of her own pocket, in effect repudiating the assignment. *See id.* at *6. Under those facts, denying the plaintiff the right to sue comported neither with the policies underlying ERISA nor with common sense. It is doubtful that the same rule would apply absent similar facts. *See* F&R at 14 (observing that "an assignment, in some cases, may deprive the assignor of her right to sue"). The Oregon rule notwithstanding, the common law generally has evolved rules to permit

---

[10] Defendants also cite *Cagle v. Bruner*, 112 F.3d 1510 (11th Cir. 1997), for the proposition that both a participant and her assignee have standing to sue to collect. But *Cagle* stands only for the proposition that a participant may assign her right to benefits and retain the right to sue to enforce "distinct interests." *Id.* at 1515.

assignees to collect on more fragile assignments without subjecting obligors to double liability.
*See generally Rest. (2d) of Contracts* § 331 (discussing "[p]artially [e]ffective" assignments).
Doubtless, the federal common law under ERISA will do the same.

In addition to state law, the policies underlying ERISA also weigh against permitting
insurance companies to pay an assignor and deprive the assignee of the right to collect. The right
to assign claims, where not bargained away, benefits participants by enabling them to receive
treatment without having to establish their solvency or pay potentially large medical bills up
front. *Misic*, 789 F.2d at 1377. To providers, the primary incentive to accept assignments in lieu
of payment is a streamlined and simplified billing structure. If the insurance company could
undo that incentive at its option, providers would have no reason to accept assignments or pursue
uncertain claims on their clients' behalf; the assignment-based business model would cease to
exist. An insurance company that would rather have providers streamline their billings only by
participating in the plan already has an appropriate mechanism available under the law: bargain
for an anti-assignment clause. Where it has not, and it is notified of a valid assignment, it must
honor the assignment and pay the assignee.

## CONCLUSION

The Court ADOPTS Judge Stewart's Findings and Recommendations (Dkt. 24), as
supplemented herein. For the reasons set forth in Judge Stewart's Findings and
Recommendation, as supplemented above, Defendants' motion to dismiss for failure to state a
claim (Dkt. 11) is GRANTED as to Claim 3 and otherwise DENIED. Plaintiff's Claim 3 is
DISMISSED with leave to replead as a separate ERISA violation.

**IT IS SO ORDERED**.

DATED this 5th day of November, 2014.

/s/ Michael H. Simon

PAGE 11 – OPINION AND ORDER

Michael H. Simon
United States District Judge

PAGE 12 – OPINION AND ORDER